

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| JOSEPH L. MIZZONI, | 3:12-cv-00321-RCJ-VCP |
| Plaintiffs, | **ORDER** |
| vs. | |
| RENEY BAKER, et al., | |
| Defendants. | |

Plaintiff, who is a prisoner in the custody of the Nevada Department of Corrections, has submitted a civil rights complaint pursuant to 42 U.S.C. § 1983 and has filed an application to proceed *in forma pauperis*. The financial information provided indicates to the Court that plaintiff is unable to pay the filing fee at this time. The Court has screened plaintiff's civil rights complaint pursuant to 28 U.S.C. § 1915A.

**I. Screening Pursuant to 28 U.S.C. § 1915A**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1),(2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d. 696, 699 (9th Cir. 1988). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that

a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act of 1995 (PLRA), a federal court must dismiss a prisoner's claim, "if the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d. 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Laboratory Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.; see Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*,

556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II. Screening of the Complaint

Plaintiff alleges that his rights under the Eighth Amendment have been violated by defendants who failed to properly protect him from harm caused by other "unknown" inmates on at least two occasions and because they then refused to provide him with x-rays and medication for a neck injury suffered in a second inmate assault.

Plaintiff names defendants Warden Reney Baker, Medical Director Robert Bannister in their supervisory capacities and Dr. Mike Koehn, Senior correctional officer (Sc/o) Irvin and correctional officer (c/o) Mackentash (or Macentash).

### A. Failure to Protect

In extensive detail, plaintiff reiterates the contents of several grievances filed with staff and administration of the Ely State Prison regarding the events of March 8, 2011 and thereafter. He complains that he had previously complained of bags of garbage being left in front of his cell door. Then on March 3, 2011, while his cell door hatch was opened by c/o Mackentash and c/o Bradly to receive his breakfast, an "unknown" inmate threw a coffee bag "full of a [sic] unknown substance" which hit plaintiff's cell door and the liquid contents flew into the cell and onto the plaintiff. Plaintiff complains he was never given any cleaning supplies to remove the unknown substance and was never examined

3

for injuries.[1] Plaintiff asserts this incident occurred because the correctional officers improperly opened all of the hatches to the cells at the same time, allowing the other inmate the opportunity to throw the coffee bag out of his cell and into plaintiff's, "endangering plaintiff's life."

On a subsequent, but unidentified date, plaintiff avers that he was being taken to the shower by c/o Mackentash and Sc/o Irvine with his hands cuffed behind his back when he was again assaulted by an "unknown" inmate in an adjoining shower, when the inmate threw a full bottle of lotion and struck plaintiff in the forehead. Plaintiff alleges that he suffered an injury to his neck in this incident when he jerked his head to attempt to avoid being struck by the bottle. Plaintiff argues that Sc/o Irvine and c/o Mackentash failed to protect him from this injury, because he told them about the coffee bag incident and they did nothing and because "Irvine is responsible for his officers..and he did endanger me" and because Mackentash "knew or should of known that allowing me to be near the "unknown" inmate this would happen." Complaint pp. 4-F and 4-G.

"Prison officials have a duty to take reasonable steps to protect inmates from physical abuse." *Hoptowit v. Ray*, 682 F.2d 1237, 1250-51 (9th Cir. 1982); *see Farmer v. Brennen*, 511 U.S. 825, 833 (1994). To establish a violation of this duty, the prison must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. *See Farmer*, 511 U.S. at 834. In other words, the official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* at 838.

In this case, plaintiff alleges he had advised the defendants that their actions in leaving the cell hatches open all at the same time was dangerous. He seems to imply that this warning should have put the defendants on notice that he might be in danger at any time in any place. Plaintiff is unwilling to identify the source of his safety concerns or give the identity of the inmate or inmates that he fears.[2]

---

[1] Plaintiff does not allege he received any known injuries from this incident, but contends that the fact that the substance was unidentified should have resulted in some type of medical examination or investigation by staff. He does not state he asked to see the doctor.

[2] Plaintiff declined to identify the inmate for fear of being labeled a snitch. Complaint, p. 4-A.

Under these circumstances, it would be nearly impossible for the defendants to have anticipated or prevented the second assault where plaintiff was struck by a lotion bottle thrown by an "unknown" inmate in the shower area. Prison staff cannot be charged with anticipating and preventing every harmful act committed by prisoners one against another if the identities of the aggressive inmate is unknown or withheld. Prisons cannot isolate the hundreds of inmates one from another at all times. Plaintiff has not stated a claim against defendants Irvine or Mackentash on the facts alleged. Neither has he stated a claim against defendant Reney Baker on these facts, where Baker was said to have signed off on grievances and agreed that the responsibility for the neck injury was with the inmate that threw the bottle, not the correctional officers. Complaint, p. 3-D.

The facts presented do not demonstrate that defendants knew of and disregarded a substantial risk of serious harm to defendant. This claim fails.

B. Denied Medical Care

Plaintiff also complains that he has been denied medical care for the neck injury he suffered when he was struck in the forehead with a bottle of lotion thrown by an "unknown" inmate. He notes that he was seen immediately after the incident by a nurse, who advised him "that his neck was not messed up." Complaint 3-B. When the pain continued plaintiff saw Dr. Martin who opined that plaintiff had suffered a "medical injury" and prescribed some muscle relaxers, a "balm ointment" and an x-ray. *Id.* The muscle relaxer caused plaintiff to suffer numbness in his extremities and a skin rash. As a result he saw another physician, Dr. Mars, who opined his neck pain was from a separate back injury and Mars discontinued the prescribed treatments. Plaintiff's neck was not x-rayed. *Id.*

According to the complaint, the neck pain continued, and plaintiff was never given the x-ray. He alleges that he has been denied proper medical care by defendants Dr. Koehn and by the Medical Director who signed off on grievances advising him to kite for additional medical care. When plaintiff inquired if the doctor was going to do the neck x-ray and if not, could he be advised why not, the response from Dr. Koehn was, "no and no." *Id.* at 3-F.

A government is obligated to provide the necessary medical care for those individuals it incarcerates. Failure to do so violates the Eighth Amendment's proscription against "cruel and unusual

punishment." To determine whether a government's acts amount to an "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion), in violation of the Cruel and Unusual Clause, a prisoner must prove that there was deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Deliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment" *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980), *cert.* denied, 450 U.S. 1041 (1981), or where the "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) overruled on other grounds by *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir.1997) (quoting *Estelle*, 429 U.S. at 104. Deliberate indifference is not shown by simply proving acts that amount to medical malpractice, such as negligent diagnosis or negligent treatment. *Estelle v. Gamble*, supra; *Johnson v. Treen*, 759 F.2d 1236 (5th Cir. 1985); *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337 (9th Cir. 1981); *Ramos v. Lamm*, supra. "*A fortiori*, a mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment." *Ramos v. Lamm*, 639 F.2d at 575. Moreover, "methods of diagnosis and choice of treatment of an inmate are therefore not subject to judicial review." *Peterson v. Davis*, 551 F.Supp. 137, 147 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).

Plaintiff's allegations fail to raise a claim for denial of medical care against any defendant. Plaintiff seems to be mostly concerned that his neck has not been x-rayed. He does not suggest how having his neck x-rayed would remedy his condition or say why one doctor's initial determination that an x-ray should be obtained, which was later reconsidered, is more accurate than another doctor's opinion that the pain in his neck arose from an injury to his back. He does not state what treatment, apart from the x-ray, he seeks. Prison officials are not required to provide inmates with every treatment or therapy or diagnostic avenue that may be available where the costs and security deficits outweigh the likely benefit to be derived from the treatment. Plaintiff's disagreement with the doctors in this matter does not rise to an Eighth Amendment violation.

### III.  Conclusion

Given the depth of plaintiff's factual presentation, it does not appear to this Court that he could amend the complaint to remedy the deficiencies noted herein. As a result, the complaint shall be dismissed with prejudice for failure to state a claim.

**IT IS THEREFORE ORDERED** that plaintiff's application to proceed *in forma pauperis* is **GRANTED**. Plaintiff shall not be required to pay an initial partial filing fee. However, even if this action is dismissed, the full filing fee must still be paid pursuant to 28 U.S.C. § 1915(b)(2).

**IT IS FURTHER ORDERED** that the plaintiff is permitted to maintain this action to conclusion without the necessity of prepayment of any additional fees or costs or the giving of security therefor. This Order granting *forma pauperis* status shall not extend to the issuance of subpoenas at government expense.

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1915(b)(2), the Nevada Department of Corrections shall pay to the Clerk of the United States District Court, District of Nevada, 20% of the preceding month's deposits to plaintiff's account (inmate #68549), in the months that the account exceeds $10.00, until the full $350 filing fee has been paid for this action. The Clerk of the Court shall send a copy of this Order to the Finance Division of the Clerk's Office. The Clerk shall also send a copy of this Order to the attention of the Chief of Inmate Services for the Nevada Department of Corrections, P.O. Box 7011, Carson City, NV 89702.

**IT IS FURTHER ORDERED** that the Clerk shall **FILE** the complaint (ECF No. 1-1) which is **DISMISSED WITH PREJUDICE.  This dismissal shall count as a strike under 28 U.S.C. § 1915(g).**

The Clerk shall enter judgment accordingly.,

DATED:  January 29, 2013.

_____
UNITED STATES CHIEF DISTRICT JUDGE